[Decided July 30, 1894.]

## WALLACE v. SUBURBAN RAILWAY CO.

[S. C. 37 Pac. 477; 25 L. R. A. 663.]

1. NONSUIT—JURY TRIAL.— On a motion for a nonsuit every intendment and every fair and legitimate inference which can arise from the evidence must be made in favor of the plaintiff, and the court must assume those facts as true which the jury could properly find under the evidence: *Herbert* v. *Dufur*, 23 Or. 462, approved and allowed.

2. RAILWAYS— NEGLIGENCE— STREET CROSSINGS.— The law demands greater vigilance and care in running cars over a public street crossing which is much frequented by children going to and returning from school at a time when they may reasonably be expected to be using the crossing than is demanded at other places.

3. NEGLIGENCE— RAILWAYS.— It is for the jury to judge whether the failure of a school child to look or listen before attempting to cross a street car track shows a want of that degree of care which could reasonably have been expected of such a child: *Cassida* v. *Oregon Railway and Navigation Company*, 14 Or. 551, cited and approved.

4. RAILWAYS — NEGLIGENCE — PRESUMPTION.— The presumption that a person seen on a street car track will leave it before a street car reaches him cannot be indulged in when a child of tender years is seen, though the child was negligent in going on the track.  If defendant's servants saw its dangerous position, it was their duty to exercise all the diligence then possible to avoid injuring her.*

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This is an action by John E. Wallace, administrator of the estate of Mary Bodiala, deceased, against the City and Suburban Railway Company to recover damages for the death of plaintiff's intestate, caused by the alleged negligence of the defendant corporation in the management and operation of one of its electric street cars on Savier Street, in the City of Portland.   The negligence charged in the complaint is that a car, while being run and operated recklessly, negligently, and carelessly, and without the exercise of any care and attention, and at an excessive and dangerous rate of speed, ran over and killed the plaintiff's intestate, a child about six years of age, while she was lawfully crossing the track at the public street crossing. At the close of plaintiff's testimony the defendant submitted a motion for a nonsuit, which being overruled, the trial resulted in a verdict and judgment in favor of plaintiff, from which defendant appeals.

AFFIRMED.

*Mr. Rufus Mallory* (*Messrs. Cyrus A. Dolph,* and *Joseph Simon* on the brief), for Appellant.

*Mr. Nathan D. Simon* (*Messrs. Henry E. McGinn* and *Alfred F. Sears, Jr.,* on the brief), for Respondent.

Opinion by MR. CHIEF JUSTICE BEAN.

*The above case is published in 25 L. R. A. 663, with an exhaustive note on the duty of a street railway company to avoid injury to children on its track.  See also *Bottoms* v. *Seaboard Railroad Company,* 25 L. R. A. 784, with extended note.—REPORTER.

1.  Appellant now insists that the court erred in overruling its motion for a nonsuit. The refusal to nonsuit was proper, unless the evidence for the plaintiff, taken in its most favorable light, would not authorize the jury to find a verdict in his favor. On a motion for a nonsuit every intendment and every fair and legitimate inference which can arise from the evidence must be made in favor of the plaintiff, and the court must assume those facts as true which a jury could properly find under the evidence. "Before a court is authorized to grant a nonsuit for insufficiency of evidence," says LORD, C. J., "it must appear that, admitting the testimony of plaintiff to be true, and giving him the benefit of every inference that is fairly deducible from it, the plaintiff has still failed to support his action. In fact, it is enough if the evidence offered tends to show facts sufficient to sustain the action, though remotely": *Herbert* v. *Dufur*, 23 Or. 462, 32 Pac. 302. The only question we have to determine, then, is whether there was any evidence offered by plaintiff from which the jury could lawfully find that the death of plaintiff's intestate was caused by the negligence of the defendant in operating its cars at an excessive and dangerous rate of speed. The main facts may be briefly stated as follows: The defendant's cars run east and west on Savier Street, and at or near the intersection of that street with Nineteenth Street there is a parish school, which, at the time of the accident, was attended by the deceased and a number of other children, who were accustomed, as was known to the persons in charge of the car, to use the crossing at which plaintiff's intestate was killed in going to and from school. A few moments after the school had adjourned for lunch, and while the children were on the street, some engaged in playing near the track, and others on their way home, the defendant's car came down Savier Street, running, as the evidence for plaintiff tended to show, at

the rate of ten miles an hour, and, without slowing down, attempted to pass the crossing, and in doing so the plaintiff's intestate was knocked down by the car and killed. The particular incidents attending the accident are not fully disclosed, the only eye-witnesses being two boys, aged nine and thirteen years, respectively. The elder boy first stated that he was playing marbles in the street, about ten feet from the track, and saw the car strike the deceased, and two wheels pass over her body; and afterwards testified that she was standing on the crossing, about three feet from the track, while the car was coming down from Twentieth Street, and he did not see the car strike her, but saw her fall on the track. The other boy, who is a brother of the deceased, says that he and his sister were on their way home from school, and that he had hold of her hand, and while they were crossing the track his sister was struck by the car, and that neither of them saw it, nor did they look to see if a car was coming, and knew nothing of its approach until it struck the girl, when he jumped back.

2. The contention for the defendant is, that this evidence does not in any way tend to show that the excessive or dangerous speed of the car was the proximate cause of the injury, or that it would not have occured if the car had been running at a rate of speed perfectly safe and legal. If we assume, as does the argument for the defendant, that the child, without the fault or negligence of the defendant, suddenly and unexpectedly appeared on the track immediately in front of the car, we might conclude that her death was an unavoidable accident, and that the rate of speed would be immaterial, for upon such an appearance upon the track no precaution could have prevented the accident. But because these facts are not fixed and certain the case had to go to the jury, and the

rate of speed properly became an element in the case. The evidence does not show how far in advance of the car the child attempted to cross the track, but it does tend to show that she was on or within three feet of the track, within plain view of the persons in charge of the car while it was moving from Twentieth Street down to the place of the accident, and, notwithstanding such fact, that no attempt was made to avoid a collision. It is a well settled principle that a wrongdoer is responsible for such consequences as might reasonably have been anticipated as likely to occur as the natural and probable result of his misconduct, and it is ordinarily the province of the jury to ascertain whether the injury in a particular case was such natural and proximate result of the wrong complained of: *Hartvig* v. *North Pacific Lumber Company,* 19 Or. 522, 25 Pac. 358; *Ransier* v. *Minneapolis Railway Company,* 32 Minn. 331, 20 N. W. 332. Now, in this case, the accident occurred at a public street crossing much frequented by children going to and returning from school, at a time when the children might reasonably be expected to be using the crossing, and therefore the law demanded the greater vigilance and care on the part of those in charge of the car. They saw, or could, by the exercise of reasonable care, have seen, the children on or near the track a sufficient length of time before reaching the crossing to have slowed down and had the car under control, but, in place of doing so, were running at a dangerous rate of speed, as we must assume. In view of the rule that what is ordinary care and what negligence are inquiries to be answered in most cases by the jury, we think it cannot be declared as a matter of law that it is not negligence in those in charge of an electric street car who see, or can, by the exercise of ordinary care, see a company of small children on or near the track at a public street crossing, and who they have reason to suppose are crossing

the street, to attempt to pass them at the rate of eight or ten miles an hour.   It was, therefore, clearly the province of the jury to ascertain the position of the child while the car was coming down the street, and whether a slower rate of speed would not have enabled the persons in charge of the car to have observed the child on the track in time to avert the accident.   There was, then, sufficient evidence for the consideration of the jury, tending to show that the excessive speed of the car was negligence, and the proximate cause of the injury, unless the deceased was guilty of such contributory negligence as would prevent a recovery by her administrator.

3.   As a general rule, it is undoubtedly the duty of a pedestrian to look and listen before attempting to cross a street car track, and a failure to do so will bar a recovery; but this rule is not to be applied inflexibly in all cases, without regard to age or circumstances.   If we assume that it can be asserted, as a proposition of law, that a child of the age of the deceased is *sui juris*, so as to be chargeable with negligence, the law is not so unreasonable or unjust as to require of it the same degree of reason and consideration in avoiding the consequences of the negligence of others that is required of persons of full age and capacity, and it should be left to the jury to determine whether the child, in attempting to pass in front of the car, acted with that degree of care and prudence which might reasonably be expected, under the circumstances, of a child of her age and capacity.   She was lawfully in the street, and was as much entitled to use the crossing as the defendant corporation.   In attempting to do so she was run over and killed by the car of defendant, running at an excessive and dangerous rate of speed.   The negligence of the defendant must, therefore, be assumed, and it was for the jury to judge whether the child's conduct in attempting to cross the track in front of the approaching car without looking

or listening, was characterized by any want of that degree
of care which could reasonably have been expected of a
a child of her age: *Cassida* v. *Oregon Railway and Naviga-
tion Company*, 14 Or. 551, 13 Pac. 438; *Railroad Company* v.
*Gladmon*, 15 Wallace, 401; *Stone* v. *Dry Dock Railroad Com-
pany*, 115 N. Y. 104, 21 N. E. 712; *Byrne* v. *New York Rail-
road Company*, 83 N. Y. 620; *Mattey* v. *Whittier Machine
Company*, 140 Mass. 337, 4 N. E. 575; *Philadelphia Railroad
Company* v. *Long*, 75 Pa. St. 257; *Pennsylvania Railroad
Company* v. *Kelly*, 31 Pa. St. 372; *Barry* v. *New York Central
Railroad Company*, 92 N. Y. 289, 44 Am. Rep. 377.    View-
ing, then, the case from the standpoint of plaintiff's testi-
mony alone, the motion for a nonsuit was properly over-
ruled.

4.    By paragraph six the court simply asserts the doc-
trine that although the child may have been guilty of
negligence in going on the track, yet, if the servants of de-
fendant in charge of the car saw the dangerous position in
which she had placed herself, it was their duty to have
exercised all the diligence then possible to avoid injuring
her.    The terms "more than ordinary diligence," and
"extraordinary diligence," as used by the court, were in-
tended to define what would constitute ordinary care under
the exigencies of the situation.    The term "ordinary care"
is a relative term, always dependent on circumstances.
What would be ordinary care in one case would be the
grossest neglect in another.    Thus, if an adult should be
seen on a street car track it might be assumed that he
would leave the track before the car reached him, but no
such presumption can be indulged in as to the conduct of
an infant of tender years; and hence when the court said
that if the servants of defendant saw this child on the
track, they were required to use more than ordinary dili-
gence to prevent injury, it was only, in effect, saying that
the age of the child required the highest degree of care on

the part of the servants of the defendant, and nothing short of that would be ordinary care under the circumstances. Nor do we find any error in the other instructions complained of. The statement that the case should receive the same consideration as if the child were living, and had brought an action herself for injuries, is in the opening paragraph of the charge, and, in view of what follows could not have been intended or understood by the jury as asserting that the same rule for the measure of damages should be applied as if the child had lived and brought an action for her own injuries. The judgment will be affirmed.

AFFIRMED.